Smith, J.
We state our conclusions as to this case as briefly as possible, in view of the many questions of law and of facts which have been argued to the court. In the first place, we may say, that with some doubt in the mind of one of the members of the court, we would not reverse the judgment of the common pleas on the ground that the trial court erred in refusing to grant the motion for a new trial, based on the claim that the verdict was against the weight of the evidence. It seems very clear to us, that the evidence shows,that there was very great negligence on the part both of the plaintiffs intestate, and of the defendant company in their conduct at, and before the time of the injury, which produced the death of the former- — -in this, that the deceased, when he came down Fourth street from the north at the time, and before he reached Sycamore street on which the train was coming east to cross Fourth street, and before he reached the track and started to walk east thereon, might have seen the train coming for several hundred feet, and thus could easily have avoided any injury to himself. But instead of doing this, it would seem from the evidence, that before he reached the railroad track, or be *225 fore he started, to walk in an easterly direction over Fourth street on the track of the railway, he neither stopped, looked or listened, as in the exercise of proper care he should have done and thus could have avoided the injury; and not doing so, he was run down by the train.
On the other hand, the railroad company was clearly negligent in this: It was evidently running its train along and crossing the street of the city at a greater rate of speed than the ordinance of the city provided for — -and at a dan- • gerous rate for such a locality. We think, the weight of the evidence is, that the whistle was not sounded or the-engine bell rung continuously as the statute provided. On this state of fact, both of the parties being negligent, and both contributing to the injury received by plaintiff’s intestate, ordinarily there could not be a recovery against the company for the injury suffered by the deceased. But in this case, if we take to be true the positive statements of the engineer and fireman of the train, that for several hundred feet before the train reached Fourth street, its speed! was only between four and five miles an hour (which we-greatly doubt), and that those managing the engine discovered this old man walking eastward on the track with his. back to the train, across Fourth street, apparently unconscious of danger, when the engine was perhaps one hundred' and fifty feet from him, and that immediately the danger signal was sounded, and they saw Murphy apparently in á dazed condition, hesitating as to what he should do, and under such circumstances the train was not stopped as might have been done by the use of proper appliances' in eight to ten feet, as the evidence shows, and thus prevented the collision if the train was running at the rate of speed testified to by those in charge of it, the plaintiff would be entitled to recover, though her intestate had originally been, *226 negligent in walking on the track — for in such case the injury might have been prevented.
Second: Was there error in the rulings of the trial court as to the admission or rejection of evidence, prejudicial to the rights of the company ? There are so many of those questions raised that it would take a great deal of time to consider them, and we specially refer to those only about which there may seem some question. A great many objections were raised to evidence offered by the plaintiff as to the character of this crossing over Fourth street (which had been placed there by the company, being boards laid lengthwise along either side and between the rails, so that the track might safely be crossed by vehicles passing up and down the street), and that those boards had been constantly used by the public generally as a crossing of Fourth street, there being no crossing there made by the city, as the track crosses the street diagonally. The claim of the ■company being, that any person using said railroad track as ■a crossing was a trespasser.' We think this claim of the ■company was not well founded, and that evidence as to its general use by the public was competent. In our opinion, the public was entitled to the use of this part of the street, as well as any other part thereof; but the fact that the railroad company was also entitled to the use thereof, and thus made the use of it dangerous, called for a high degree of care and caution on the part of those so using it, to avoid danger from the proper use of its track by the company.
Objection was made to the introduction of an ordinance passed by the city authorities declaring the crossing of Fourth street, at this point, to be a dangerous one, and ordering the company to' erect safety gates there within fifteen days, and directing the proper officer to be notified as directed by the statute. No such notice was ever given to this company as required 'by law — though there is evidence tending to show *227 that the superintendent of the company may have been advised of the passage of the ordinance, and some negotiations or conversation had with some officers of the corporation as to this and other matters —■ but no steps to carry this out as provided by Jaw, were ever taken by the council or the company. We question very much the competency of this evidence. The most that can be claimed for it is as showing the opinion of the council that the crossing was a dangerous one, and that the company was advised of this opinion. Whether it was prejudicial error, we perhaps might differ about, but we agree that it would have been better to exclude it.
We incline to the opinion also that the evidence of Hays, the conductor, a man of great and long experience in the running of trains, and who was shown to have been present on this occasion, and saw what took place, that in his opinion, the train was stopped as soon as it could have been done, should have been received, and on the evidence such testimony was material. And so of the testimony of Hainer, that on the sounding of the danger signal, it dazzed or excited Murphy, and it seemed as though he could not make up his mind what to do.
In many particulars it is urged, that the court erred in charging the jury, or in refusiUg to charge as requested. We notice the following: First: That the court erred in charging the jury, “that if you find from all the evidence that the deceased materially contributed to the injury that caused his death, then it is your duty to find in favor of the defendant.”
It is not disputed by counsel lor plaintiff in error, that the statement so made was correct. It is urged that he should also have said, that if he contributed in any degree thereto, that the same result should follow. And it is probable that such is the true rule. But as the statement as it stood was sound, if counsel desired the other statement *228 given, he should have asked for it, and not having done so, the objection is not well taken.
The court, at the request of the counsel for plaintiff below, charged the jury as follows:
“If the defendants, in its agents or employes in charge of the-train, knew Mr. Murphy to be in a perilous position, and might, after obtaining this knowledge by the use of ordinary care, have avoided the injury to him, and did not do so, but carelessly and negligently caused the injury to him,then the plaintiff is entitled to recover notwithstanding Mr. Murphy imprudently placed himself in the position of peril. ’ ’
We think the general doctrine aimed to be stated here, is correct. The charge requested, might properly have been more correctly and clearly stated, by an addition thereto after the words, “in a perilous position”, of these, or words conveying the same idea, “and apparently was unconscious of his danger, or from some cause appeared unable to escape the threatened danger”. For it can not be questioned that a man on the railroad track,not far in front of a rapidly moving train, is in a perilous position, and particularly if unconscious of its approach; and for this reason, the duty is imposed upon those managing the train to use care in preventing injury to him, and in case of injury might be liable for the damage which resulted. But in this case, the court, of its own account, proceeded further to say in addition to the charge-asked:
“The court will give you that charge; it has substantially given you that before. It was the duty of the railroad employes, when they saw Martin Murphy, to have used every reasonable means in their power to stop the train and thereby save his life, And whether they could-have stopped the train or not is a question for you to decide from the evidence you have heard.”
In this additional statement at least, we think the court went too far and stated the law too strongly against the *229 defendant, and assumed the province of the jury in deciding a question of fact against the company. There was evidence, as has been said, tending to show that the train was running between four and five miles an hour, and that by the use of reasonable and proper means, it could be stopped within ten to twelve feet when running at that speed on such a grade. That those running the train discovered Murphy on the track one hundred and fifty feet ahead of the train. The court then says to the jury, that when they saw him, it was their duty to have used every reasonable means in their power to stop the train — and this without any reference to the fact, whether the persons running the train had any good ground to believe that Murphy was unconscious of its approach, or that he was from any cause unable in time to step from the track and thus escape all danger of a collision with the train. We do not understand that there is any principle of law which justifies this statement to the jury. It is a matter of general knowledge, that it is a very common thing for persons to walk upon a railroad track, even where they have no right to be, and that they are often discovered by those running the train at a long distance ahead. Can it be claimed to be the law that the very moment such person is so seen, that every reasonable effort must be made to stop the train? This would be unreasonable and absurd. The presumption would be,that •such person is possessed of the ordinary senses of mankind —’that he can hear and see, and when notified by the whistle or bell of the engine, or the noise made by the train itself, that he will leave the track in time to escape from the threatened danger, and we understand the law to be that the trainmen were justified in acting upon this proposition until the contrary appears to be the case, using due care in the premises, Of course, if there is anything disclosed which raises a suspicion that the person is deaf or blind or helpless, then the obligation on the part of the trainmen to *230 use all necessary and proper care to avoid injury by stopping the train,if necessary to do so,immediately arises. In the case of Street R. R. Co. v. Cavagna, 6th C. C., 606, this court held that a charge requested by the company to be given to the jury, “that the street was not a play ground for children, and that the gripman was not bound to anticipate that children on the side walk would suddenly run upon the track; or even if he saw a boy running towards the track, that it was not absolutely his duty to stop the car at once. That he might exercise his judgment to determine whether the boy would see the car and stop. And that after he saw him, and in the exercise of his judgment, he acted as a reasonably prudent gripman ought, and made every effort in his power to avoid the injury, the company would not be liable”, was a proper charge, and ought to have been given.
It is also urged, that the following charge by the court to the jury, was erroneous and prejudicial:
“The railroad company has a right to use its track and to cross Fourth street; the general public have a right to use Fourth street and cross the track. Upon that proposition, the court charges you that the rights of the respective parties are equal. The general public has as good a right to cross over the track at Fourth street as the railroad company has to cross Fourth street on its track — no better, no worse. They are both alike”.
In the case already cited from the 6th 0. 0. Rep., the court had occasion to consider the correctness of a charge, somewhat similar. There the court, without any ' qualification, charged the jury as follows:
“And in this connection, I may say, that upon public streets, any person has the right to walk, either on the pavement, or on the part usually used by vehicles, or upon the part of the street occupied by the street cars.”
The reviewing court held:
“That this broad statement was calculated to mislead the *231 jury. There is no doubt but that foot passengers have a right to walk upon the roadway of the street, or even upon the tracks of a railroad laid thereon, under certain circumstances. They are compelled to cross such streets and tracks, and may walk along the same instead of the pavement ordinarily used for this purpose, if necessary, or proper under the circumstances to do so. But this is not to be done as against the ordinary rights of others, and when used in this way, much greater care and caution are required of the footman, than if he were in the ordinary footway, for the reason that such part of the street is also rightly and principally used by teams, vehicles and cars. In this case, where one of the issues was whether the defendant, under all the circumstances of the case, was running its cars with ordinary care, the jury might well have understood, that in the opinion of the court; the plaintiff was rightfully in the street and on the track, and that the fault was wholly with the defendant.”
The objection there made, applies with equal or greater force to the language used by the trial court in. the case at bar.
It is also claimed, that the trial court erred in the charge given to the jury as to the burden of proof being on the defendant below,to show negligence on the part of the plaintiff’s intestate, which contributed to the injury. The court spoke on this point several times. In the general charge he said:
“The burden of proving that he (the plaintiff) materially contributed to his own death is upon the defendant; that is, the defendant must show to you by a preponderance of the evidence, that the deceased contributed to his own death. The burden, upon that point, is upon the defendant. ” And in the third special charge, asked by th8 plaintiff and given by the court is this language: “Theburden of showing negligence on the part of the defendant, its agents or employes-is upon the plaintiff, and the burden of showing negligence on the part of Mr, Murphy is upon the defendant.”
This is all that appears in the charge of the court on this point.
*232 The rule on this point is clearly and explicitly stated by the supreme court, in the case of B. & O. R. R. Co. v. Whitacre, 35 Ohio St., 627, as follows:
“In an action for injury occasioned by negligence,where the circumstances require of the plaintiff the exercise of due ■care to avoid the injury,and bis testimony does not disclose any such want of care on his part, the burden is upon the defendant to show such contributive negligence as _will defeat a recovery. But if plaintiff’s own testimony, in support of his cause of action, raises a presumption of such contributory negligence, the burden rests upon him to remove that presumption.’’
Now,in the case at bar, where the plaintiff’s own evidence did very clearly raise a presumption of negligence on his part which directly contributed to the injury, by his going upon this dangerous crossing when h9 must have known .that trains frequently ran over the track, without having once looked to see whether a train was approaching, though he could have seen the track for perhaps four hundred feet if he had looked for it — an old man with the heads of two hogs slung upon his shoulders and probably interfering with his vision and hearing, and his ability to escape, can it be said that the court was justified in saying that the burden of proving his contributory negligence rested upon the defendant? It was a case which clearly called for the whole of the law as announced by the supreme court in the case cited to be given to the jury. The claim may be made, that the law as stated by the court was the general rule, and that if the other side wished the court to give the limitation upon it, they should have asked for it, But the difficulty is that under the circumstances disclosed, the doctrine stated was not the law of the case, and the giving of it was erroneous and prejudicial to the rights of the defendant.
It is also claimed, that the court erred in giving the fifth special charge asked by plaintiff as modified by it, viz:
“While it was the duty of Mr.Murphy to exercise the care a man of ordinary prudence is accustomed to use under like *233 circumstances, -be had a right to presume that the defendant would not run its train through said city and over said ■crossing any faster than the ordinance of the city of Hamilton provided,”
The correctness of this charge seems to be established by the decisions in this state, but the court added the following to it, and then gave it:
‘‘He bad a right to assume a train passing over that road would not be run at a speed greater than five miles an hour, and he had a right to govern his conduct accordingly,”
How far “had he a right to govern his conduct accordingly” ? Suppose he saw the train approaching ata rate of ■speed of twenty-five miles an hour. Had he still a right to proceed on the track as leisurely as if it were only running at five miles an hour, and suffer himself to be run down? The statement was incorrect, and was liable to mislead the jury-
Complaint is also made as to the sixth special charge given to the jury at the request of the plaintiff as modified by the court. The charge asked, was this:
“A person acting with ordinary care is not guilty of contributory negligence, because he fails to anticipate and protect himself against the negligence cf another”.
This was probably good law, but was modified by the court by adding thereto the following:
“A party has a right to assume that another will do his duty, and has no right to anticipate that he will do otherwise. And so in this case, if you find that Mr. Murphy is crossing the road at that place depended upon the fact that the train was only allowed to run at the rate of five miles an hour, he had no right to expect or anticipate it would be run faster than that.”
We know of no principio of law that would debar him of the right to expect or anticipate this, though he may not be guilty of contributory negligence if he fails to do so. The addition was uncalled for, and probably was erroneous, but may not have been prejudicial.
Millilcin, Shotts & Millikin, for Plaintiff in Error.
Morey, Andrews & Morey, for Defendant in Error.
There are other minor exceptions to the charge, as for instance, ihat the court erred in saying to the jury that it might give any damage it pleased so that it did not exceed $10,000, and that in estimating the damages the jury had a right to look at his advice to his children, his counsel to them, his control over them, and in stating that all these might be considered by the jury for the purpose of fixing the damages to which plaintiff might be entitled to recover. We do not regard these statements to the jury as being exactly proper, but as in the charge the court clearly instructed the jury that the plaintiff was only entitled to recover for the pecuniary damages suffered by those entitled to the fruits of the recovery, it is probable that any error therein was thereby cured.
But on the other grounds stated we feel constrained to reverse the judgment and award a new trial.